# In the United States Court of Federal Claims

No. 14-221L
(Filed: March 11, 2016)

* * * * * * * * * * * * * * * * * * * *

TODD HOCHSTETLER AND
KARISSA HOCHSTETLER,
For Themselves and As
Representatives of a Class of
Similarly Situated Persons,

               *Plaintiffs*,

v.

THE UNITED STATES,


               *Defendant.*

National Trails System Act; 16 U.S.C. §§ 1241-1251; Fifth Amendment Takings Clause; Centerline presumption; language of deed

* * * * * * * * * * * * * * * * * * * *

    *Steven M. Wald* and *Michael J. Smith*, St. Louis, MO, with whom were *Thomas S. Stewart* and *Elizabeth G. McCulley*, Kansas City, MO, and *J. Robert Sears*, St. Louis, MO, for plaintiff.

    *Cullen S. Shearburn*, United States Department of Justice, Environment & Natural Resources Division, Natural Resources Section, Washington, DC, with whom was *John C. Cruden*, Assistant Attorney General, Environment & Natural Resources Division, for defendant.

---

## OPINION

---

    Plaintiffs, Todd and Karissa Hochstetler ("the Hochstetlers"), Jane Christopherson, Hunter Grain Company, David A. Burchill and Rebecca J. Burchill ("the Burchills"), the owners of several tracts of land in Cass County,

North Dakota, bring this case pursuant to the Takings Clause of the Fifth Amendment. Plaintiffs claim that their land is adjacent to and underneath areas of the railroad line that Burlington Northern Santa Fe Railway Company ("BNSF") acquired as easements for railroad purposes, and therefore conversion of the railroad line to a recreational trail through operation of the National Trails System Act ("Trails Act"), 16 U.S.C. §§ 1241-1251 (2012), constituted a taking of plaintiffs' land without just compensation. Pending are the parties' cross-motions for partial summary judgment on liability. The motions are fully briefed, and oral argument was held on December 14, 2015. We held the matter in abeyance for a period while the parties unsuccessfully pursued settlement.  For the reasons stated below, we deny plaintiffs' motion for summary judgment, and we grant defendant's cross-motion for summary judgment.

BACKGROUND

A. Statutory Background

Section 1247(d) of the Trails Act prompts certain federal agencies to encourage the conversion of unused railroad rights-of-way into recreational trails by state and local governments or private entities. *See* 16 U.S.C. § 1247 (2012). One of these federal agencies, the Surface Transportation Board ("STB"), is tasked with regulating the construction, operation, and abandonment of railroad lines in the United States. Pursuant to its authority, the STB promulgated regulations governing the abandonment or discontinuance of rail lines. 49 C.F.R. §§ 1152.1-1152.60 (2015). A rail operator seeking abandonment or discontinuance of the use of a rail line pursuant to these regulations must first file an application with the STB. 49 U.S.C. § 10903 (2012).

If a rail operator so chooses, however, it may seek an exemption from filing an abandonment application. 49 C.F.R. § 1152.50. Instead of pursuing abandonment, the rail operator is permitted to negotiate with a state, municipality, or private entity to assume responsibility for operating the railroad right-of-way as a recreational trail. The entity, if it is willing to assume financial responsibility, is referred to as an Interim Trail Sponsor and must file a Statement of Willingness to Assume Financial responsibility. *Id.* § 1152.29. The STB then issues a Notice of Interim Trail Use ("NITU").  *Id.* This notice results in a stay of the abandonment proceedings and allows the parties 180 days to enter into an interim trail use agreement. *Id.*  Upon the finalization of

an interim trail use agreement, abandonment proceedings are suspended and rail service is discontinued to allow for conversion of the right-of-way into a recreational trail. This process of staying the abandonment process and converting the right-of-way into a recreational trail is known as "railbanking."

B. Factual Background

BNSF, through its predecessor, Northern Pacific Railroad Company ("Northern Pacific"), acquired a segment of the rail corridor in Cass County, North Dakota between milepost 68.10 in Arthur, North Dakota and milepost 75.50 in Hunter, North Dakota ("the rail line"). On November 2, 2011, BNSF filed an abandonment exemption relating to the railroad line in Cass County, North Dakota. The City of Arthur Park Board and the City of Hunter Park Board ("the Park Boards") subsequently filed a petition with the STB indicating that they were willing to assume financial responsibility under the Trails Act. BNSF responded to the Park Boards' petition, stating that it was ready to begin negotiating an interim trail use agreement. The STB filed an NITU relating to the railroad line on December 19, 2011. On September 30, 2013, BNSF notified the STB that it and the Park Boards had reached a railbanking agreement for the railroad line.

DISCUSSION

There are five parcels at issue in this case: two belonging to Jane Christopherson, one belonging to the Hochstetlers, one belonging to the Burchills, and one belonging to Hunter Grain Company.[1] Plaintiffs claim these parcels lie adjacent to and underneath segments of the rail line in which BNSF held easements for railroad purposes.

A portion of the parties' disagreement centers around the type of property interest acquired by BNSF's predecessor-in-interest. Plaintiffs argue that the rail line adjacent to Jane Christopherson's land (Parcels 2A and 2B) was acquired only through the General Railroad Right of Way Act of 1875, 43

---

[1] Defendant labels the parcels as Claims 1, 2A, 2B, 3, and 4. Claims 2A and 2B refer to the parcels owned by plaintiff Jane Christopherson. Claim 1 refers to the parcel owned by the Burchills, Claim 3 refers to the parcel owned by the Hochstetlers, and Claim 4 refers to the parcel owned by Hunter Grain Company. We will use these labels in our discussion.

U.S.C. § 934 (2012), and that the rail line adjacent to the parcels belonging to the other three plaintiffs (1, 3 and 4) was acquired as a prescriptive easement by use, i.e., resulting not in a fee but in an easement. Under this view of the facts, the result would have been the railroad's acquisition of easements for railroad purposes adjacent to land which plaintiffs eventually purchased. Plaintiffs then rely on North Dakota's "centerline" presumption,[2] under which grants to landowners adjoining easements extend to the center of the easement. Thus, according to plaintiffs, because Jane Christopherson was conveyed land bounded by the rail line, she owns to the center of the rail line. When the railroad use ended, therefore, conversion of the railroad line into a recreational trail exceeded the scope of the easements, thus triggering a taking of plaintiffs' underlying land.

Defendant argues that the centerline presumption is inapplicable here. As to Claims 2A and 2B, it contends that the railroad's predecessor-in-interest, Northern Pacific Railroad, acquired title by fee to the land adjacent to plaintiff Christopherson through the Land Act of 1864, 13 Stat. 365, which gave the railroad a limited fee subject to a reversionary interest in the United States. When the land was no longer used for railroad purposes, it reverted to the United States. Therefore, there could not have been a taking from plaintiff because she never acquired land adjacent to an easement.

As to Claims 1, 3, and 4, defendant has alternative arguments. First, that the railroad right of way was acquired by BNSF through adverse possession, and therefore BNSF held the parcels in fee simple. Alternatively, defendant argues that, even if BNSF merely possessed a prescriptive easement over the rail line proximate to Claims 1, 3, and 4, the claims still fail because plaintiffs' land does not actually adjoin the rail corridor due to the interposition of a highway owned in fee by the state of North Dakota.

A.  Claims 2A and 2B

As to these parcels, two undisputable facts dictate a result in favor of defendant:  BNSF's predecessor-in-interest acquired *all* of section 35 in fee in

---

[2] This presumption provides that "a conveyance by an owner of land bounded by a street or a highway carries the fee to the center of the way unless the contrary is shown." *Welsh v. Monson*, 79 N.W.2d 155, 157 (N.D. 1956); N.D. CENT. CODE § 47-10-10 (1957).

1864; and plaintiff's land lies in section 35. That fee interest cannot be divested absent a transfer *from* the railroad. Consequently, the fact that the railroad's predecessor-in-interest may have acquired an easement for railroad purposes in section 36[3] through the General Railroad Right of Way Act of 1875 (the railroad was apparently laid on the border of sections 35 and 36) is irrelevant. So long as plaintiff Christopherson acquired land adjacent to the fee portion of the rail corridor, she does not benefit from the centerline presumption.[4]

B. Claims 1, 3, and 4

There is no question that North Dakota State Highway 18 physically separates plaintiffs' land from the rail corridor. Irrespective of whether the railroad acquired an easement, the parties agree that defendant succeeds if the state owns the highway in fee rather than as an easement. This is the case because plaintiffs depend on the centerline presumption, by which, if the presence of the highway is ignored (if it is only an easement), plaintiffs own land adjacent to the railroad. If the rail corridor is an easement as well, plaintiffs own to the centerline of the railroad right of way and reacquire use when the railroad ceases operation. On the other hand, if defendant is correct and the state owns Highway 18 in fee, then plaintiffs' land is not adjacent to the railroad corridor and they do not benefit from the centerline presumption. We do not need to reach the nature of the railroad interest, in other words, if

---

[3] Plaintiffs contend that the rail corridor lies in National Archives and Records Administration ("NARA") Parcel No. 48, which lies in Township 143 North, Range 52 West, Section 36. According to plaintiffs, Parcel No. 48 was acquired via the Act of 1875, which the United States Supreme Court previously held results in the grant of an easement.

[4] *See* 65 Am. Jur. 2d Railroads § 35 ("Absent a reservation or contrary evidence, the title of the fee *subject to easements* in a railroad right-of-way is presumed to be in the abutting owners and the title of each extends to the center of the right-of-way.") (emphasis added). We are unwilling, however, to divest the railroad or its successors of their clear original fee interest in absence of a deed conveying the land under the right-of-way in section 35 to plaintiff or her predecessors using fee language, set out in metes and bounds. Without such an instrument, we are left with an original fee interest in the railroad, and nothing supporting plaintiff's claim other than the centerline presumption, which does not operate in this scenario.

Highway 18 keeps plaintiffs' land from being adjacent to the railroad.[5]

North Dakota law provides us with useful presumptions which lead to the conclusion that Highway 18 was conveyed in fee. First, plaintiffs are correct that, as a general rule, in the absence of a statute expressly providing for acquisition by fee or a deed conveying a fee, the right acquired by the public in land for highway purposes is ordinarily an easement. *Rutten v. Wood*, 57 N.W.2d 112, 113 (N.D. 1953); *Lalim v. Williams County*, 105 N.W. 2d 339, 345 (N.D. 1960). A competing presumption, however, is that a fee simple is intended to pass by a grant of real property unless it appears from the grant that a lesser estate was intended. *Lalim*, 105 N.W. 2d at 344; N.D. Cent. Code § 47-10-13 (1943).

Here, defendant presents us with a series of deeds which indicate that North Dakota's interest in Highway 18 was acquired by through the language of fee simple conveyance.[6]  Absent any other considerations, they overcome the common law presumption in favor of creation of an easement only in transfers for highway purposes.

In response, plaintiffs direct us to *Lalim*, where the Supreme Court of North Dakota was tasked with determining whether a very similar deed to Williamson County, North Dakota, made to expand an existing public highway, transferred an easement or a fee. The *Lalim* court ultimately concluded that the land was conveyed as an easement.

*Lalim,* however, is distinguishable. In *Lalim*, although the deeds conveying the land under the highway contained the same language as the

---

[5] We suggested to the parties that this question be referred to the North Dakota Supreme Court for an advisory opinion.  They demurred.

[6] *See* Def.'s Ex. 13, which conveys the land constituting Highway 18 to the state of North Dakota uses the following language: " [grantor] does by these presents GRANT, BARGAIN, SELL and CONVEY unto the [grantee], its successors and assigns, FOREVER, all that tract or parcel of land lying and being in the County of Cass and State of North Dakota, and described as follows . . . ." This language indicates intent to convey a fee simple. *See EOG Resources, Inc. v. Soo Line R. Co.*, 867 N.W. 2d 308, 317 (N.D. 2015). There is nothing about this language that suggests the interest conveyed was limited to highway purposes.  *See id.*

deeds at issue here, the land was conveyed in order to expand an existing highway, which the state held as an easement. Therefore, conveying the land for the highway expansion as a fee interest would create the odd result of putting an easement in between two tracts of land held in fee by the plaintiff. *Id.* at 346-47. The *Lalim* court only determined that the deed at issue was sufficiently ambiguous to permit judicial construction "when considered with the plat to which it refers." *Id.* at 346.

Here, on the other hand, there is no reason to believe that the parties to the highway deeds intended anything other than a fee. Accordingly, because Claims 1,3, and 4 are separated from the rail corridor by Highway 18, which the state of North Dakota owns in fee simple, the claims do not adjoin the rail corridor, the centerline presumption does not apply,[7] and plaintiffs have no cognizable interest in the land underlying the rail corridor. It is therefore irrelevant whether the railroad held the corridor as an easement or in fee. Accordingly, summary judgment is granted for defendant as to Claims 1, 3, and 4.

The parties' competing suggestions that we turn to related statutory provisions are not helpful. Defendant relies on North Dakota Century Code section 24-01-32 which appears to require that states acquire a fee simple interest in highways.[8] As plaintiffs point out, however, section 24-01-32

---

[7]See *supra* Section A discussing Claims 2A and 2B.

[8] North Dakota Century Code section 24-01-32 states the following:

> For the purposes of chapter 177 of the 1953 Session Laws, the highway authorities of the state, or any county, or municipality may acquire private or public property and property rights for controlled-access facilities and service roads, including rights of access, air, view, lights, and such advertising rights outside of the right of way as may be determined by the director to be in the public interest, by gift, devise, purchase, or condemnation in the same manner as such units are now or hereafter may be authorized by law to acquire such property or property rights in connection with highways and streets within their respective jurisdictions. All property rights acquired under the provisions of chapter 177 of the 1953 Session Laws must be in fee simple, provided, however, as to any and all lands acquired or taken for

appears to apply only to collateral acquisitions, i.e., acquisitions of additional property, which is not applicable in this case.

Plaintiffs' reliance on North Dakota Century Code section 32-15-03.2, that highways can only be dedicated as easements,[9] is equally unhelpful. As defendant points out, section 32-15-03.2 is contained within a chapter of the North Dakota Century Code titled "Eminent Domain" and thus does not apply where the highway is acquired by deed, as was the case here.

CONCLUSION

For the reasons set forth above, plaintiffs do not have a property interest in the land underlying the railroad rights of way at issue.  We therefore grant defendant's motion for  summary judgment and deny plaintiffs' motion for

---

highway, road, or street purposes, they may not obtain any rights or interest in or to the oil, gas, or fluid minerals underlying said lands. In connection with the acquisition of property or property rights for any controlled-access facility or portion thereof, or service road in connection therewith, the state, county, or municipal highway authority may, in its discretion, acquire an entire lot, block, or tract of land, if, by so doing, the interests of the public will be best served, even though said entire lot, block, or tract is not immediately needed for the right of way proper.

N.D. CENT. CODE § 24-01-32 (1953).

[9] North Dakota Century Code section 32-15-03.2 states that

No transfer to the state of North Dakota or any of its political subdivisions of property for highway purposes shall be deemed to include any interest greater than an easement, and where any greater estate shall have been so transferred, the same is hereby reconveyed to the owner from which such land was originally taken, or to the heirs, executors, administrators, or assigns of such owner. Such reconveyance shall be subject to any existing contracts or agreements covering such property, and all rights and benefits thereof shall accrue to the grantee.

N.D. CENT. CODE § 32-15-03.2 (1953).

summary judgment. The clerk is directed to enter judgment accordingly. No costs.

<div style="margin-left: 50%;">

s/Eric G. Bruggink
ERIC G. BRUGGINK
Judge

</div>